**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

JAMES B.[1]

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendants.

Case No. 2:25-cv-933

Sargus, J.
Bowman, M.J.

## REPORT AND RECOMMENDATION

Plaintiff James B. filed this Social Security appeal in order to challenge the Defendant's finding that he is not disabled. *See* 42 U.S.C. § 405(g). Proceeding through counsel, Plaintiff presents one claim of error, which the Defendant disputes. As explained below, the Administrative Law Judge (ALJ)'s finding of non-disability should be **AFFIRMED**, because it is supported by substantial evidence in the administrative record.

### I. Summary of Administrative Record

Plaintiff applied for disability insurance benefits ("DIB") in December 2021, alleging disability as of August 2021. (Tr. 433). Plaintiff's date last insured for purposes of his DIB claim is September 30, 2021. (Tr. 440). The application was denied initially and on reconsideration. (Tr. 236, 244). Plaintiff then requested a hearing before an administrative law judge. (Tr 284). The application was denied initially and on reconsideration. (Tr. 236, 244). A hearing was held on March 29, 2023 and the ALJ issued a decision denying Plaintiff's claim on April 26, 2023. The Appeals Council remanded the matter back to the

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials. *See* General Order 22-01.

ALJ. On July 9, 2024, a remand hearing was held at which Plaintiff and a vocational expert testified. Thereafter, on July 25, 2024, the ALJ issued a written decision, concluding that Plaintiff was not disabled. (Tr. 10-24).

Plaintiff was born in 1972 and was 48 years old on his last date insured. (Tr 23). He graduated high school and has no past relevant work. (Tr. 23). Plaintiff has a history of physical and mental impairments including systemic Vasculitis, Aspergillosis, obesity and gout. (Tr. 240).

Based upon the record and testimony presented at the hearing, the ALJ found that Plaintiff had the following severe impairments: "cutaneous vasculitis, allergic bronchopulmonary aspergillosis, asthma, and obesity." (Tr. 13). The ALJ concluded that none of Plaintiff's impairments alone or in combination met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subp. P, Appendix 1. Despite these impairments, the ALJ determined that Plaintiff retains the RFC to perform a light work subject to the following limitations:

> He could never climb ladders, ropes, or scaffolds and can never crawl. He could occasionally climb ramps and stairs, stoop, crouch, and kneel. He needed to avoid working around hazards of high exposed places or moving mechanical parts. He needed to avoid concentrated exposure to atmospheric conditions. He needed to avoid working around extreme heat, extreme cold, humidity, wetness, and vibration. He could occasionally push and pull foot controls and occasionally operate a motor vehicle.

(Tr. 17). Based upon his RFC and testimony from the vocational expert, the ALJ concluded that Plaintiff could perform jobs that exist in significant numbers in the national economy, including merchandise marker, cafeteria attendant, and ticket seller. (Tr. 24). Accordingly, the ALJ determined that Plaintiff is not under disability, as defined in the Social Security Regulations, and is not entitled to DIB. (Tr. 24).

The Appeals Council denied Plaintiff's subsequent request for review. Therefore, the ALJ's decision stands as the Defendant's final determination. On appeal to this Court, Plaintiff argues that the ALJ erred by improperly evaluating the opinion of Dr. Ray and Dr. Rehman. Plaintiff's contentions are not well taken.

## I. Analysis

### A. Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion....

> The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); see also *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528-29 (6th Cir. 1997) (explaining sequential process); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left her unable to perform any job. 42 U.S.C. § 423(d)(1)(A).

**B. The ALJ's Decision is supported by Substantial Evidence**

Plaintiff argues that the ALJ erred in her evaluation of opinions of Plaintiff's treating sources, Dr. Ray and Dr. Rehman. Specifically, Plaintiff contends that the ALJ improperly considered the supportability and consistency of their opinions. Plaintiff's contention is unavailing.

The current regulations for evaluating medical opinions are applicable to this case because Plaintiff's claim was filed after March 27, 2017. See 20 C.F.R. § 416.920c (2017). The current regulation at 20 C.F.R. § 416.920c differs from the previous regulation at 20 C.F.R. § 416.927 in several key areas. The agency no longer has a "treating source rule" deferring to treating source opinions. 82 Fed. Reg. 5844, 5853 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15,132 (Mar. 27, 2017)). Under the current regulations, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 416.920c(a). Further, while the ALJ must articulate consideration of all medical opinions, the current regulations no longer mandate the "controlling weight" analysis or the "good reasons" standard in weighing a treating source opinion. Compare 20 C.F.R. § 416.927(c)(2) with 20 C.F.R. § 416.920c(a), (b).

*a. Dr. Rehman*

Here, the ALJ determined that the opinions of Dr. Rehman, Plaintiff's rheumatologist, were not persuasive. (Tr. 21). Notably, in December 2022, Dr. Rehman opined that Plaintiff had a "limited walking ability due to arthritic condition". (Tr. 970). Dr. Rehman noted that Plaintiff had cutaneous vasculitis that presents with skin lesions with

flare ups lasting three to four weeks occurring every few months. (Tr. 971). Dr. Rehman opined the Plaintiff could stand and walk less than two hours and could sit at least six hours in an eight-hour workday. Id. He further opined that Plaintiff would require an unknown number of breaks lasting 30 minutes each but not requiring leg elevation. (Tr. 972).

In February 2023, Dr. Rehman stated that Plaintiff had vasculitis flares for "three-to-four weeks every few months," and opined that Plaintiff could stand/walk for less than two hours in an eight-hour workday; sit at least six hours in a workday; needed unscheduled 30 minute breaks during a workday where he needed to sit quietly and elevate his legs; would be off task 20% of the day; and would be absent more than four days monthly. (Tr. 971-92).

The ALJ found those limitations unsupported by Dr. Rehman's own records and inconsistent with the record. (Tr. 21). In this regard, the ALJ highlighted internal inconsistencies within Dr. Rehman's opinion, including his statement that Plaintiff could sit at least six hours while also requiring thirty-minute breaks to sit quietly. (Tr. 21). The ALJ also noted that Dr. Rehman found that Plaintiff would also have off task time of 20% and miss more than four days per month. However, the ALJ found that there is no specific reference to symptoms or specific findings to support such limitations. Dr. Rehman opined this opinion applied back to September of 2021; however, his own treatment records are inconsistent with this degree of limitation. (Tr. 22).

Most significantly, the ALJ noted that Plaintiff's rheumatology treatment records reveal that prednisone successfully treated his symptoms and prevented flare-ups acutely which ultimately resolved the claimant's symptoms. Namely, records from November 3,

2021, show that Plaintiff's ulcerated lesions had improved "a lot" and there were no new ulcers. (Tr. 611). Thereafter, the ALJ noted that there was no mention of ulcers or flares during many visits with rheumatology throughout 2022. (Tr. 21). The ALJ further noted that the record indicates that Plaintiff repeatedly reported to be doing well with old lesions having healed and no active lesions. (Id.) (internal citations omitted). The ALJ also found that Plaintiff did not report recurrent lesions until December of 2022 which were treated with a Prednisone taper which resulted in no new or active lesions being found during a February 2023 examination. (Tr. 22). In light of the foregoing, the ALJ determined such evidence was highly inconsistent with the rash occurring for three to four weeks every few months. As such, the ALJ found that the record is more consistent with much lessor limitations than opined by Dr. Rehman.

Plaintiff argues, however, that Dr. Rehman's opinion was well supported by the record. In this regard, Plaintiff points to Dr. Rehman's treatment notes detailing Plaintiff experiencing "severe" pain in his ankles and that his symptoms were made worse by overuse or standing. (Tr 582, 590, 598). Plaintiff notes that by 2022, he was reporting severe back, ankle, and hip pain which increased with overuse and that he was experiencing morning stiffness lasting "approximately 60 minutes." (Tr 964). In 2023, Dr. Rehman noted that Plaintiff was experiencing morning stiffness lasting for "approximately 120 minutes." (Tr 1001). Dr. Rehman reported on multiple occasions that Plaintiff's overall disease activity was "characterized as worse." (Tr 572, 590, 776, 787, 995, 1024, 1080, 1087, 1102, 1125).

Despite the ALJ's finding to the contrary, Plaintiff further argues that Dr. Rehman's opinions were consistent with the record. Namely, Plaintiff contends that the longitudinal

record of vasculitis flares that worsened whenever prednisone was tapered. Plaintiff points to a series of treatment notes showing increased rash and pain at lower doses, referrals to wound care, and later “new pustular lesions on his ankles. (Tr. 994). Plaintiff’s contentions are not well-taken.

Plaintiff’s argument ultimately asks the Court to reweigh the medical and opinion evidence and to substitute its judgment for that of the ALJ. However, it is well established that the role of the ALJ is to articulate how he considered medical opinions and how persuasive he found the medical opinions to be. *Holston v. Saul*, No. 1:20-CV-1001, 2021 WL 1877173, at *11 (N.D. Ohio Apr. 20, 2021), *report and recommendation adopted*, No. 1:20 CV 1001, 2021 WL 1863256 (N.D. Ohio May 10, 2021). Under 20 C.F.R. § 404.1520c, an ALJ must evaluate the “persuasiveness” of each medical opinion, which requires the ALJ to explain how he considered the supportability and consistency of the opinion. Notably, the role of the Court is not to reweigh the evidence, but to make sure the ALJ employed the proper legal standard by considering the factors and supported the conclusion with substantial evidence. *Id.*, at *14. The ALJ did so here. As detailed above, the ALJ properly evaluated the supportability and consistency of Dr. Rehman’s opinions.

*B. Dr. Ray*

With respect to Dr. Ray, the ALJ found his opinions were not persuasive. (Doc. 22). In this regard, Dr. Ray offered similar opinions as Dr. Rehman, in that he offered an opinion with significant limitations. Namely, in February 2023, Dr. Ray opined the Plaintiff could sit less than two hours, stand and walk less than two hours, required unscheduled breaks very often, would need to sit with his legs elevated, would miss more than four

days per month, and would be off task more than 25% of the time. (Tr. 974). Dr. Ray opined these limitations applied from 2018 forward. (Tr. 22).

The ALJ, however, determined that the treatment records indicate that Plaintiff was far more capable than Dr. Ray opined. (Tr. 22). The ALJ noted that while the Plaintiff was obese and experienced vasculitis presenting with intermittent symptoms, treatment with prednisone successfully improved his symptoms. Id.. Moreover, the ALJ found that the physical examination findings during the period under adjudication are more consistent with lessor limitations, such as findings of normal strength and observable improvement or resolution in lesions and ulcers. Id. Additionally, Dr. Ray considered impairments that are not established or symptomatic during the period under adjudication. For example, the ALJ noted that Dr. Ray considered Plaintiff's osteoarthritis which was not symptomatic during this period. Id. (internal citations omitted). Considering the forgoing, the ALJ found that the record is more consistent with much lessor limitations than opined. (Tr. 22).

As with Dr. Rehman, Plaintiff argues that Dr. Ray's opinion was well supported and consistent with the record evidence. Namely, Plaintiff points to Dr. Ray's notation that he was having "a lot of difficulty walking due to bilateral hip pain as well as his pain for vasculitis of his legs." (Tr 1049). Plaintiff further notes that Dr. Ray reported that Plaintiff was "unable to stand for very long because of weakness in his legs and pain in his legs and hips." Id. Plaintiff also pointed to his continued treatment with prednisone after flareups. (Tr. 705, 708).

Additionally, in July of 2021, Plaintiff notes that he displayed "bruising and red areas on bilateral ankles for 3 weeks" that "look like hemangiomas then they become hemorrhagic appearing. (Tr 701). The next month, Dr. Ray reported that Plaintiff was

experiencing a "recurrent outbreak of itchy and painful rash on both legs." (Tr 701, 705). Plaintiff further noted that Dr. Ray stated that he had "some redness developing just above the left medial ankle area." (Tr 748). Such evidence, however, fails to show error on the part of the ALJ.

As detailed above, the Plaintiff's argument ultimately asks the Court to reweigh the medical and opinion evidence and to substitute its judgment for that of the ALJ. Here, the role of the Court is not to reweigh the evidence, but to make sure the ALJ employed the proper legal standard by considering the factors and supported the conclusion with substantial evidence. On this record, the ALJ built an adequate logical bridge between the evidence and the RFC. *See Fleischer v. Astrue*, 774 F.Supp.2d 875, 877 (N.D. Ohio 2011) (As a rule, an ALJ must build an accurate and logical bridge between the evidence and his conclusion). The decision repeatedly acknowledged Plaintiff's recurring vasculitis symptoms and obesity, but concluded that the objective findings, treatment response, and timing of later flare evidence did not support the extreme absenteeism, off-task behavior, leg-elevation requirement, or sitting and standing limitations assessed by Drs. Rehman and Ray. Because the ALJ adequately addressed supportability and consistency, and because substantial evidence supports the resulting RFC and step-five finding, Plaintiff has not shown reversible error.

In light of the foregoing, the undersigned finds that ALJ properly evaluated the opinion evidence. As noted by the Commissioner, as long as the ALJ's decision, when read as a whole, shows that the ALJ substantively considered the supportability and consistency factors, the ALJ's decision must be affirmed. *See Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014) (recognizing that the ALJ's decision should be read

as a whole when determining whether his consideration of the opinion evidence was consistent with the regulations). Such is the case here.

**III. Conclusion and Recommendation**

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision be found to be **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **AFFIRMED**, and that this case be **CLOSED.**

*/s Stephanie K. Bowman*
Stephanie K. Bowman
United States Chief Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

JAMES B.

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendants.

Case No. 2:25-cv-933

Sargus, J.
Bowman, M.J.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** after being served with a copy thereof. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).